Alene Anello (State Bar No. 316387)
Amanda Howell (*pro hac vice* forthcoming)
**ANIMAL LEGAL DEFENSE FUND**
525 East Cotati Avenue
Cotati, CA 94931
(707) 795-2533
*aanello@aldf.org*
*ahowell@aldf.org*

Deepak Gupta (*pro hac vice* forthcoming)
Daniel Wilf-Townsend
**GUPTA WESSLER PLLC**
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741
*deepak@guptawessler.com*
*daniel@guptawessler.com*

*Attorneys for Plaintiff Miyoko's Kitchen, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

MIYOKO'S KITCHEN, INC.,

      *Plaintiff,*

v.

KAREN ROSS, in her official capacity as
Secretary of the California Department of
Food and Agriculture, and STEPHEN BEAM,
in his official capacity as Branch Chief of the
Milk and Dairy Food Safety Branch,

      *Defendants.*

Case No. _____

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

      Miyoko's Kitchen, Inc.—a maker of 100% plant-based foods—brings this suit under the First Amendment because California's Milk and Dairy Food Safety Branch has recently ordered Miyoko's to remove truthful messages and images from its website and its product labels—including the phrase "100% cruelty and animal free," the use of the word "butter" in the phrase "vegan plant butter," and even an image of a "woman hugging a cow."

Complaint

**INTRODUCTION**

Miyoko's Kitchen, Inc. produces a popular line of 100% plant-based vegan cheese and butter products. The company prominently markets all its products as vegan and plant-based, with labels that unmistakably convey that they are "VEGAN" (for example, "CULTURED VEGAN PLANT BUTTER") and that they are "***Made From Plants***." Founded in 2013 by Miyoko Schinner—a Japanese immigrant who published a successful vegan-cheese cookbook the previous year—Miyoko's has grown rapidly, leading observers to predict that it has "the potential to do for dairy alternatives what Beyond Meat is doing for beef substitutes." The company's target market is people who want to avoid dairy made from animals. To that end, its products are all described—on its labels on grocery store shelves, on the company's website, and in its advertising—as "100% dairy and cruelty free." Schinner founded Miyoko's on "the principle of compassion for all living beings." "We're on a mission," she says, "to craft dairy products we all love, 100% from plants, making them kinder, greener and tastier than ever before."

But Miyoko's recently received a letter from the State of California that gravely imperils its ability to truthfully convey that mission, and accurately describe its products, to the public. In the letter, the Milk and Dairy Food Safety Branch of the Department of Food and Agriculture orders Miyoko's to remove claims that its vegan products are "100% cruelty and animal free," "cruelty free," and "lactose free"—all entirely truthful statements. The State also instructs Miyoko's that it may not legally use the word "butter" in the phrase "Cultured Vegan Plant Butter." And the State informs Miyoko's that it may not "assert" that Miyoko's products "are 'revolutionizing dairy with plants'"—in other words, the company may not proclaim its own mission to the public—because this renders its products "misbranded" under federal law.

Going further still, the State orders Miyoko's to "remov[e]" an "image of a woman hugging a cow" (and other images "associating the product with such activity") from the

company's website. According to the letter, Miyoko's statements and images, both on its labels and website, "require[] revision" to come into "compliance" with state and federal law. The company is ordered to "make the necessary changes" and submit them for review by the State.

The State's stance would suppress speech while in no way protecting the public from deception. For decades, plant-based producers have used terms like "vegan cheese," "soy milk," and "cashew yogurt." Consumers are not confused by these labels. In fact, plaint-based dairy terms are so widely used that the FDA itself uses them.

In censoring Miyoko's mission, its animal-friendly imagery, and its accurate descriptions of its plant-based products, the State of California has bowed to pressure from industry lobbyists and taken sides in a heated national debate between proponents of plant-based and animal-based foods. Because of the growing consumer demand for plant-based alternatives, conventional meat and dairy producers increasingly view plant-based foods as a threat. Their lobbyists have responded by pressuring legislators and regulators (including California's) to censor the speech of plant-based producers. Arkansas, for example, recently passed a law to prevent plant-based companies from truthfully using words like "meat" to describe their products—an effort that was recently enjoined by a federal court under the First Amendment.

California has now joined the ranks of these protectionist state actors. The State has insisted that Miyoko's make wholesale changes that would prevent the company from communicating its mission and cost well over $1 million in new packaging alone. The State's action has already chilled Miyoko's speech and will significantly obstruct plant-based producers' ability to convey their message. The State's position, and its purported application of state and federal law, violate the First Amendment on an as-applied basis. Miyoko's accordingly seeks injunctive and declaratory relief to safeguard its right to engage in truthful and non-misleading speech about its plant-based dairy products, without fear of enforcement or reprisal by the State.

Complaint

1

**JURISDICTION AND VENUE**

2       1.     This action arises under the Constitution of the United States and 42 U.S.C.

3   § 1983. The jurisdiction of this court is invoked under 28 U.S.C. §§ 1331 and 1343(a).

4       2.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)–(2) because the

5   plaintiff resides in Sonoma County, which is located in this judicial district, and a substantial part

6   of the events or omissions giving rise to the claims occurred in Sonoma County.

7

**INTRADISTICT ASSIGNMENT**

8       3.     This action arises in Sonoma County because a substantial part of the events

9   giving rise to the claim occurred in Sonoma County and the case should therefore be assigned

10   under Civil Local Rule 3-2(c) to either the San Francisco Division or Oakland Division.

11

**PARTIES**

12       4.     The plaintiff, Miyoko's Kitchen, Inc., is incorporated in the State of California

13   and headquartered in Petaluma, California. Miyoko's is a certified B corporation, which means

14   the company is meeting the highest standards of social and environmental performance, public

15   transparency, and legal accountability.

16       5.     Miyoko's develops, produces, markets, and sells plant-based food products,

17   including vegan cheese wheels in various flavors (classic chive, sundried tomato garlic, garlic

18   herb, sharp English farmhouse, smoked English farmhouse, herbes de Provence, black ash), fresh

19   vegan mozz (regular and smoked) and cultured vegan butter. Miyoko's products are marketed

20   and sold nationwide, including throughout California.

21       6.     Defendant Karen Ross, as Secretary of the California Department of Food and

22   Agriculture, heads the agency tasked with enforcing the Milk and Milk Products Act, Cal. Food

23   & Agric. Code 32501 *et seq*., which also governs "products resembling milk products." Ross has

24   acted, and continues to act, under color of state law at all times relevant to this complaint.

Complaint

7.      Defendant Stephen Beam is the Branch Chief of the Milk and Dairy Food Safety Branch of the California Department of Food and Agriculture, which is the branch of the Department charged with enforcement of the Milk and Milk Products Act. Dr. Beam has acted, and continues to act, under color of state law at all times relevant to this complaint.

## FACTUAL ALLEGATIONS

### *Miyoko's Kitchen markets clearly labeled plant-based foods.*

8.      Miyoko's Kitchen makes and sells 100% plant-based vegan cheese and butter products. Founded in 2013 by Miyoko Schinner, the company prominently markets its products as vegan and plant-based. The labels unmistakably convey to the public that the foods are "VEGAN," and include the company's taglines: "**Made From Plants**," and "**Revolutionizing Dairy With Plants**." Miyoko's marketing encourages consumers to switch to a vegan diet. Schinner calls herself "The Queen of Vegan Cheese" and highlights that her products are "phenomenally vegan."

9.      Miyoko's has grown rapidly since its founding, leading some to recognize that Miyoko's has the potential to do for dairy alternatives what blockbuster plant-based products such as Beyond Meat and the Impossible Burger are doing for beef substitutes.

10.      Miyoko's products are made from cultured cashew nuts, and the company will soon be releasing products made from legumes, potatoes, and grains. Miyoko's uses natural processes such as fermentation and aging, combined with whole, organic ingredients to produce its plant-based foods. They are high-quality products that prominently highlight the fact that they are plant-based and typically sell for a higher price-point than animal-based dairy counterparts.

11.      Today, Miyoko's products are sold in 12,000 stores across the country. Sales are booming—the company grew 168% in the past year—and although Miyoko's makes a wide range of dairy-free products, Miyoko's top seller is its vegan butter.

Complaint

1

**Illustration 1**
**Vegan butter, vegan cream cheese, vegan mozz,**
**and cheese wheel made from plants**

2

3




4

5

6

7

8

9

10




11

12

13

14

15

16

17

18

19

20

21

22

23

24

Complaint

**Illustration 2**
**Miyoko's website, Vegan Butter product**



12.     Miyoko's business model relies entirely on consumers being able to clearly distinguish its products from animal-based dairy products. Consumers choose Miyoko's products because they are increasingly aware of how their food choices affect the environment, animal welfare, and their own health.[1] And studies show that consumers are often willing to pay nearly twice as much for plant-based alternatives to animal-based dairy. When consumers buy plant-based dairy alternatives, they are not accidentally purchasing cheaper, lower-quality products—quite the opposite. And producers of plant-based dairy alternatives do not want their products to be mistaken for animal-based counterparts, lest their products lose their primary appeal.

----

[1] *See* DSM Food Specialties, *Consumer Insights Report: Plant Power: What's Behind the Market Growth for Plant-based Foods?*, https://www.dsm.com/content/dam/dsm/food-specialties/reports/Consumer-Insights-Series-Plant-Power-2019.pdf?id=1550073911258 (last visited Feb. 5, 2020); *see also* Edlong, *Connecting with Consumers in Plant-based Dairy*, Food Dive (Nov. 19, 2019), https://www.fooddive.com/spons/connecting-with-consumers-in-plant-based-dairy/567437/ (last visited Feb. 5, 2020).

Complaint

1

2

***The conventional dairy and meat industries lobby state and local governments to halt their rapidly growing plant-based competition.***

3

4

5

6

7

8

9

10

13.     Miyoko's, along with other plant-based producers, has benefited from rapidly climbing demand for plant-based foods, experiencing unprecedented growth in recent years. Sales of plant-based dairy alternatives have been increasing year after year and now make up about 13% of the total market for dairy and dairy alternatives.[2] While sales of plant-based dairy alternatives have grown about 3.1 percent since last year, dairy sales have gone down about 5 percent.[3] The conventional dairy industry views competition from plant-based alternatives as a threat, and apparently sees the rising sales of plant-based dairy alternatives as linked to the decline in demand for animal-based dairy products.[4]

11

12

13

14

14.     As a result, some players in the dairy industry—and in the meat industry too—have vigorously lobbied legislators and government agencies to take action against their plant-based competitors. For the past two decades, the National Milk Producers Federation has petitioned the FDA to prevent plant-based dairy alternatives from using dairy terminology to

15

16

[2] Vegan cheese sales totaled $117 million, showing 17.4% growth. Vegan butters were up to $12.6 million, representing an uptick of 4.9%.

17

18

19

[3] CISION PR Web, *Plant Based Foods Sales Experience 8.1 Percent Growth Over Past Year*, (Sept. 13, 2017), http://www.prweb.com/releases/2017/09/prweb14683840.htm (last visited Jan. 29, 2020); Plant Based Foods Ass'n, U.*S. Plant-Based Retail Market Worth $4.5 Billion, Growing at 5x Total Food Sales*, (July 12, 2019), https://plantbasedfoods.org/2019-data-plant-based-market/ (last visited Jan. 29, 2020).

20

21

22

23

24

[4] Mary Ellen Shoup, *Dairy Industry Sees Rise of Plant-based Milk as "Serious Threat,"* Dairy Reporter (May 3, 2017), https://www.dairyreporter.com/Article/2017/05/04/Dairy-industry-sees-rise-of-plant-based-milk-as-serious-threat; Keith Nunes, *Meeting the Challenges of Dairy Alternative Development*, Food Business News (Oct. 7, 2019), https://www.foodbusinessnews.net/articles/14551-meeting-the-challenges-of-dairy-alternative-development; Chuck Jolley, *Six Greatest Ag Challenges for 2018*, Feedstuffs (Dec 07, 2017), https://www.feedstuffs.com/commentary/six-greatest-ag-challenges-2018 (warning that "[m]arket researchers estimate total sales of dairy and meat alternatives will reach $25 billion in just two very short years").

Complaint

1    describe their products.[5] Similarly, in February 2018 the United States Cattlemen's Association

2    petitioned the USDA to prevent plant-based alternatives to meat from using the terms "beef"

3    and "meat."[6]

4         15.    After largely failing at the federal level, the animal agribusiness industry has

5    turned its pressure to states whose economies heavily rely on animal agriculture. For the past two

6    and a half years, the same dairy industry lobbyists that struck out with the FDA have been

7    writing to California's Milk and Dairy Food Safety Branch to complain about vegan products

8    using "dairy terminology"—even though they are clearly labeled with plant-based terms like

9    "almond milk yogurt" and "cashew milk."[7] Similarly, in Wisconsin, the Director of the

10

11        [5] *See* Letter from National Milk Producers Federation (NMFP) President/CEO to FDA
     (Feb. 21, 2019), https://www.nmpf.org/wp-content/uploads/2019/03/National-Milk-
12   Producers-Federation-Citizen-Petition-and-Attachments.pdf; Letter from NMPF President/CEO
     to Sylvia Mathew Burwell, Secretary U.S. Department of Health and Human Services (HHS)
13   and Thomas Vilsack, Secretary U.S. Department of Agriculture (USDA) (May 8, 2015),
     https://www.nmpf.org/wp-content/uploads//file/NMPF-Comments-DGAC-Report-
14   050815.pdf; Letter from Dr. Beth Briczinski, VP Dairy Foods & Nutrition, NMPF, to Docket #
     FDA-2012-N-1210 (Aug. 1, 2014), https://www.nmpf.org/wp-
15   content/uploads//file/Issues%20Watch%20Standards/NMPF-Comments-on-Nutrition-Label-
     080114.pdf; Letter from Dr. Beth Briczinski, Director Dairy Foods & Nutrition NMPF to Docket
16   # FDA-2010-N-0210 (July 28, 2010), http://docplayer.net/41361054-National-milk-producers-
     federation.html; Letter from Dr. Beth Briczinski, Director Dairy Foods & Nutrition NMPF to
17   Kathleen Sebelius Secretary HHS and Thomas Vilsack Secretary USDA (July 15, 2010); Letter
     from Jerry Kozak Present/CEO NMPF to Margaret Hamburg Commissioner, FDA (April 28,
18   2010): Letter from Dr. Robert Byrne VP Regulatory Affairs NMPF to Dr. Christine Lewis
     Director Office of Nutritional Products, Labeling and Dietary Supplements (Nov. 2, 2011);
19   Letter from Dr. Robert Byrne VP Regulatory Affairs NMPF to Joseph Levitt Director CFSAN
     (Feb. 14, 2000).
20
         [6] United States Cattlemen's Association petition to USDA, No. FSIS-2018-0016,
21   https://www.fsis.usda.gov/wps/wcm/connect/e4749f95-e79a-4ba5-883b-394c8bdc97a3/18-
     01-Petition-US-Cattlemen-Association020918.pdf?MOD=AJPERES.
22
         [7] NMFP letter to Stephen W. Beam, Chief, Milk and Dairy Food Safety, CDFA (Jan. 3,
23   2018), https://www.nmpf.org/wp-
     content/uploads//files/NMPF%20Kite%20Hill%20Letter%20to%20CDFA%202018%2001%
24   2003_0.pdf; NMFP letter to CDFA (Sept. 28, 2017), https://live-nmpf.pantheonsite.io/wp-
     content/uploads/2017/10/NMPF-Letter-to-FDA-09-28-2017.pdf.

Complaint

1    Wisconsin Dairy Products Association went directly to the Wisconsin Department of Agriculture,

2    Trade and Consumer Protection to complain about Miyoko's vegan butter products. The

3    Department opted to treat an industry trade group's complaint as a consumer complaint and

4    referred it to Wisconsin's Public Health Division with marching orders to pull Miyoko's products

5    from store shelves.

6        16.    The meat industry has been no less shy about running to state governments to

7    quash plant-based competition. In response to pressure from state cattlemen's associations,

8    eleven states have passed protectionist measures to prevent producers of plant-based meat

9    alternatives from using words like "meat," "beef," "sausage," and "roast" to describe plant-based

10   products.

11       17.    These laws are on the road to being struck down as unconstitutional. Just a few

12   months ago, a federal district court in Arkansas determined that the plant-based food company

13   challenging such measures is "likely to prevail on the merits of its First Amendment claim"

14   because these protectionist laws do not directly and materially advance the goal of preventing

15   consumer confusion and they are more extensive than necessary to achieve that stated goal.[8]

16       18.    Like the statements at issue in Arkansas, all of Miyoko's statements for its plant-

17   based products communicate truthful commercial information to consumers. Yet California's

18   Milk and Dairy Food Safety Branch would require the company to stop publicizing its mission,

19   change the entirety of its packaging, and refrain from its current marketing practices.

20

21   *California's Milk and Dairy Food Safety Branch attempts to censor Miyoko's truthful labels, its expression of its mission, and even the images on its website.*

22       19.    California, where Miyoko's is based, is the largest milk producer of cow milk in

23   _____

24   [8] *Turtle Island Foods SPC v. Soman*, No. 4:19-CV-00514-KGB, 2019 WL 7546141, at *9, 14 (E.D. Ark. Dec. 11, 2019).

Complaint

the United States.[9] California's Milk and Dairy Food Safety Branch is tasked with promoting the California agricultural industry, including cow milk, and has taken upon itself to inspect Miyoko's facilities despite lacking any jurisdiction to do so.

20.     On December 9, 2019, the Branch sent Miyoko's a letter claiming that the company's vegan butter product "cannot bear the name 'Butter' because the product is not butter," and instructed Miyoko's to "[r]emove the word 'Butter' from the label."

21.     The letter informs Miyoko's that "[i]mages of animal agriculture from the website must also be removed such as the image . . . of the woman hugging a cow"—even though an image of a person hugging a cow is emphatically not an "image of animal agriculture." To the contrary, the purpose of the image is to send the message that, by choosing a vegan option, consumers can help protect cows from being harmed in the dairy industry. Many consumers choose vegan food to spare animals from the cruelty that has come to be associated with animal agriculture. The words "KINDER" and "100% dairy & cruelty free" on the image make the purpose of the message even clearer: the expression of a viewpoint that cows should be cared for, and *not* used for milk.

---

[9] Rob Cook, *Milk Production: Ranking By State*, Beef2Live (Jan. 17, 2020), https://beef2live.com/story-milk-production-ranking-state-0-111564.

Complaint

1

**Illustration 3**
**Miyoko's website**

2



3
4
5
6
7
8
9
10
11

12    22.    The letter also demands that Miyoko's censor its statement that its products are

13  "100% dairy and cruelty free" even though this statement is entirely true. And the letter instructs

14  Miyoko's to remove the claims "Lactose Free" and "Cruelty Free" from its vegan butter product

15  because "the product is not a dairy product."

16    23.    Remarkably, the letter tells Miyoko's to remove the claim "Hormone Free"

17  because, according to the Branch, "although the food may be of plant origin, plants also contain

18  endogenous hormones which regulate growth." Consumers understand that a dairy alternative

19  made entirely from plants labeled with "Hormone Free" is merely emphasizing that it does not

20  contain the controversial animal hormones artificially injected into some milk-producing cows.

21  No reasonable consumer would think the label implies that Miyoko's plant-based butter is free of

22  substances that occur in all plants. Indeed, food labels routinely include analogous statements

23  such as "Chemical Free," even though every food literally contains chemicals, because consumers

24  understand that "Chemical Free" refers to a lack of additives, not a lack of every substance—

Complaint

1    such as chlorophyll or water—that could scientifically be classified as a "chemical."

2        24.    Finally, the letter instructs Miyoko's that it may not tell consumers that it is

3    "revolutionizing dairy with plants" because Miyoko's products "fail[] to contain [] milk and milk

4    ingredients."

5        25.    Complying with the State of California's censorship and multiple directives would

6    hobble Miyoko's. It would simultaneously (1) cost the company more than $1 million to change

7    its labels and marketing, (2) restrict the company from proclaiming its own mission to the public,

8    and (3) prevent the company from accurately communicating to consumers the nature and

9    contents of its products—what the products taste like, what they're made from, what they do and

10   don't contain, and how to use them.

11       26.    In fact, the changes that the letter demands will more likely *create* consumer

12   confusion—an average consumer would have no idea when to use "vegan spread" or "cultivated

13   cashew cream"—and thus would be unlikely to buy those products if they needed something

14   vegan to put on toast with jam, or something to put on a pizza in place of cheese from a cow.

15

16   ***The letter relies on extreme and dubious interpretations of state and federal law to
     justify censoring Miyoko's truthful statements.***

17       27.    The Milk and Dairy Food Safety Branch cites a range of federal and state laws

18   and regulations that it claims prevent Miyoko's from showing the image of a woman hugging a

19   cow, and from using terms like "vegan butter," "100% cruelty and animal free," "cruelty free,"

20   "lactose free," or "hormone free," and phrases like "revolutionizing dairy with plants."[10]

21       28.    For example, the State attempts to invoke California Food and Agricultural Code

22   _____

23   [10] Specifically, the California Department of Food and Agriculture cites sections 321a and
     343(b) of title 21 of the United States Code; sections 102.5, 101.18, 101.3, and 130.8 of title 21 of
     the Code of Federal Regulations; and section 38955 of the California Food and Agricultural
24   Code.

1   section 38955 to prevent Miyoko's from using images of a woman hugging a cow or claims like

2   "100% dairy and cruelty free." But section 38955 applies only to "imitation milk products,"

3   which the Code defines as "a product resembling a milk product which contains oils, fats, or

4   other ingredients, other than milk or milk products, *in combination with milk or milk products*."[11] This

5   obviously does not include Miyoko's products, which contain no milk.

6        29.    The letter also attempts to cite FDA regulations to claim that a product using the

7   word "butter" must contain "80 per centum by weight of milk fat."[12] But the FDA has repeatedly

8   recognized that foods that do not meet FDA's threshold for "butter" can of course use the term

9   "butter" in their common or usual name—products like peanut butter and apple butter, and all

10   sorts of other fruit and nut butters have used the term "butter" for well over a hundred years

11   without any hint of consumers confusing them for butter from cow's milk.[13]

12        30.    Notably, neither the FDA nor California's Milk and Dairy Food Safety Branch

13   has ever opted to take enforcement action against a product akin to almond butter out of concern

14   for consumer confusion or claimed that these products violate 21 U.S.C. § 343(b), which states

15   that a food is misbranded "[i]f it is offered for sale under the name of another food."

16        31.    The FDA has also consistently chosen not to take enforcement action against

17   plant-based dairy alternatives under 21 C.F.R. § 102.5(a), which requires that food products

18   "accurately identify or describe . . . the basic nature of the food or its characterizing properties or

19   ingredients."

20

21        [11] Cal. Food & Agric. Code § 38914 (emphasis added).

22        [12] 21 U.S.C. § 321a (defining "butter" as "the food product usually known as butter, and which is made exclusively from milk or cream, or both, with or without common salt, and with or without additional coloring matter, and containing not less than 80 per centum by weight

23   of milk fat, all tolerances having been allowed for").

24        [13] *E.g.,* 21 C.F.R. §§ 164.150 (peanut butter), 150.110 (fruit butter).

Complaint

32.     These obvious inconsistencies—between the State's current position with respect to Miyoko's, on the one hand, and the text, purpose, and past enforcement history of the cited state and federal laws and regulations, on the other hand—strongly suggest that the State's position is motivated by a content-based and viewpoint-based desire to suppress disfavored speech rather than by a good-faith effort to enforce existing law or to prevent actual consumer confusion.

### *Consumers are not confused.*

33.     Consumers need truthful and non-misleading information about the nature and use of food products they buy to make informed purchasing decisions. And for decades, plant-based producers have used terms like "vegan cheese," "soy milk," and "cashew yogurt" to convey to consumers the nature and contents of their products. The FDA, in turn, has a long history of accepting these practices—perhaps because these labeling conventions provide consumers the most accurate information about the flavor, consistency, and uses for these products. In fact, plant-based dairy terms have become so established in common parlance in the United States that the FDA itself uses them.[14]

34.     Consumers are not confused by these terms. As both this Court and the U.S. Court of Appeals for the Ninth Circuit have recognized, "it is simply implausible that a reasonable consumer would mistake a product like soymilk or almond milk with dairy milk from

---

[14] *Ang v. Whitewave Foods Co.*, No. 13-CV-1953, 2013 WL 6492353, at *3 (N.D. Cal. Dec. 10, 2013) (noting that "the FDA regularly uses the term soymilk in its public statements") (citing FDA Enforcement Report: Chocolate Covered Mixed Fruit, 2011 WL 6304352 (Dec. 14, 2011) and FDA Enforcement Report: 38% Soy milk or 43% Soy milk, 2007 WL 4340281 (Dec. 12, 2007)); FDA Enforcement Report: Vanilla flavored soy milk, 2003 WL 22319360; FDA Enforcement Report: Luna, 1999 WL 926741. The agency's enforcement reports also repeatedly refer to "coconut milk." *See, e.g.*, FDA Enforcement Report: Coconut milk, 2016 WL 7900297; FDA Enforcement Report: Hokan brand Lite Coconut Milk, 2004 WL 578464; FDA Enforcement Report: Stonewall Kitchen brand Chocolate Coconut Cupcake Mix, 2014 WL 1156074; FDA Enforcement Report: Superpan Tu Pan Natural, 2013 WL 5492399.

Complaint

a cow."[15] The possibility of such confusion is "highly improbable" and "stretches the bounds of credulity."[16] Under the same logic, consumers would also have to "believe that veggie bacon contains pork, that flourless chocolate cake contains flour, or that e-books are made out of paper."[17]

35.     Other non-dairy products have long used the word "butter," with qualifying language, and consumers face no difficulty understanding that these products don't come from a cow. Consumers are not expecting butter from a cow when they purchase Miyoko's "Vegan Butter." Likewise, consumer purchasing behavior, surveys, and label-reading studies confirm that consumers understand the nature and contents of plant-based products that use terminology like "soymilk" or "cashew cheese" or "vegan butter." There is no compelling or reliable evidence that indicates consumers purchase plant-based dairy products because they confuse them for animal-based dairy products. Rather, consumers buy plant-based dairy products because they *want* plant-based dairy products.

36.     Recent research conducted by UCLA found that consumers were not confused about the nutritional differences between animal and plant-based milk and cheese products.[18] The research found that consumers were "generally accurate at identifying nutritional differences between plant-based and animal-based milk and cheese products."[19] It found no confusion on

---

[15] *Ang v. Whitewave Foods Co.*, 2013 WL 6492353, at *4.

[16] *Id.*

[17] *Id.; see also Painter v. Blue Diamond Growers,* No. CV 17-02235, 2017 WL 4766510, at *2 (C.D. Cal. May 24, 2017), *aff'd*, 757 F. App'x 517 (9th Cir. 2018) (rejecting as "implausible" the claim that almond milk was mislabeled under federal law).

[18] Research submitted in its entirety by UCLA School of Law Animal Law and Policy Program as a comment on October 5, 2018, ID: FDA-2018-N-2381-1104, https://www.regulations.gov/document?D=FDA-2018-N-2381-1104

[19] *Id.* (These percentages are the lower bound estimate because the consumers who responded "I don't know" were not coded as answering the question correctly.)

the part of consumers about differences between animal and non-animal sourced dairy products with the label "milk."[20] Consumers similarly know what they are getting—and are not confused—when they purchase Miyoko's foods.

37.     These terms have become so ubiquitous in common usage that even the Merriam-Webster dictionary defines "butter" to include, "a buttery substance: such as (a): any of various fatty oils remaining nearly solid at ordinary temperatures; (b): a creamy food spread especially one made of ground roasted nuts."[21]

38.     The marketing and packaging of plant-based dairy products reveals that plant-based food producers do not mislead consumers but instead *distinguish* their products from conventional dairy products, while also describing how plant-based dairy products can fulfill the same roles that conventional dairy has traditionally played in consumers' meals. Plant-based foods *rely* on their ability to differentiate themselves from animal-based products. And the way companies currently label plant-based dairy products effectively ensures that consumers get what they expect when purchasing these foods.

39.     In the decades that plant-based producers have used dairy terminology with accompanying language explaining that the products are plant-based, dairy-free, or vegan, federal courts have determined that consumers are not misled by plant-based dairy products' marketing or packaging.[22] On the rare occasion when a consumer files a lawsuit contending that they have been misled by a plant-based milk, federal courts have resoundingly found these claims to be implausible.

---

[20] *Id.*

[21] *Butter,* Merriam-Webster Online, *https://www.merriam-webster.com/dictionary/butter.*

[22] *Gitson v. Trader Joe's Co.,* 13–cv–01333–WHO, 2013 WL 5513711, at *6–7 (N.D. Cal. Oct. 4, 2013) (holding that no reasonable consumer could confuse soy milk with as cow's milk when labels stated *lactose & dairy free*).

Complaint

40.     Miyoko's own products uniformly use qualifying language that distinguishes them from animal-based dairy products. Miyoko's labeling and marketing materials all clearly indicate that its products are plant-based, dairy-free, and vegan, and thus are entirely truthful. There is no evidence of consumer confusion about the ingredients or source of any of Miyoko's foods.

41.     Through its enforcement position, the State of California is attempting to prohibit plant-based dairy companies from marketing their products as plant-based dairy analogues in the advertising, labeling, and packaging of their products. This will commercially harm the plant-based dairy industry, restrict speech by plant-based dairy producers, and, in turn, protect conventional dairy producers from competition.

42.     The Milk and Dairy Food Safety Branch may be tasked with supporting the State's agricultural industries, but it is prohibited by the First Amendment from taking sides in a contentious national debate on the role of plant-based foods and leveraging its power to censor one emerging industry's speech in order to protect a more powerful and entrenched industry.

### *The effect of the State's enforcement position on Miyoko's*

43.     Absent injunctive and declaratory relief, the State of California's enforcement and regulatory position will continue to chill Miyoko's truthful and non-misleading speech, threaten its ability to deliver its core mission to the public, cause untold harm to its business, and expose the company to a substantial risk of prosecution for its truthful and non-misleading speech. The State's application of state and federal laws and regulations is specifically designed to and will significantly disadvantage Miyoko's because it restricts how Miyoko's can market, advertise, and sell its products in the marketplace.

44.     Miyoko's plant-based dairy products are distributed throughout California and nationwide at many retailers, including Safeway, Trader Joe's, Oliver's, Whole Foods, and Target. Miyoko's produces and sells many products clearly labeled as "plant based," "vegan," or

Complaint

"made from plants," and using descriptive terms, including:

- "cheese wheel made from plants" (cashew cream fermented with live cultures);

- "cultured vegan butter made from plants" (cashew cream fermented with live cultures);

- "fresh vegan mozz made from plants" (cashew cream fermented with live cultures); and

- "vegan cream cheese" (cashew cream fermented with live cultures).

Labels for Miyoko's products also include modifiers like "vegan" and "made from plants" that clearly indicate that the products do not contain milk from cows or other animals. But because its labels include terms that also apply to conventional dairy, like "butter," "cheese," "mozzarella," "cream cheese," and "dairy," Miyoko's reasonably fears prosecution by the State of California.

45.    Miyoko's offers its products to consumers because it believes that plant-based dairy products contribute to the creation of a humane, healthy, and sustainable food supply. Like other plant-based dairy companies, Miyoko's markets its products as dairy analogues and uses dairy and dairy-related terminology. Miyoko's cannot accurately and effectively describe its products without comparison to the conventional dairy products they are designed to replace.

46.    The State's position, if left undisturbed, would also force companies like Miyoko's to consider creating one set of labels for California and another set for other states, potentially raising the cost to come to market. Compliance with the State's interpretation of the regulations would therefore have a severe detrimental impact on Miyoko's nationwide marketing and packaging of its products.

47.    Since 2013, Miyoko's has invested significant time and expense in developing its products and marketing and packaging those products in truthful and non-deceptive ways. Yet, because of the State's actions, Miyoko's must now either: (1) choose to continue to have its products sold in California as packaged, at a substantial risk of prosecution; (2) design, produce, and distribute different, specialized marketing and packaging for its products when they will be

Complaint

1   sold in California, creating a logistical nightmare in distribution channels that service

2   neighboring states; or (3) change the entirety of its marketing and packaging nationwide because

3   of the State's position, at considerable expense, and causing confusion to its consumers. Each of

4   these options would put Miyoko's at a significant commercial disadvantage for no legitimate

5   reason in that they require Miyoko's to incur costs and to abstain from describing its products in

6   a manner that consumers already understand.

7       48.   As a result of the State's enforcement and regulatory position, Miyoko's is likely to

8   experience other serious harms. For example, retail chains that operate in California and other

9   states may be less likely to carry plant-based dairy products, including those produced and sold

10   by Miyoko's, if they cannot do so in the same manner in all their stores. Miyoko's also risks

11   liability for advertising in other states that spills over into California markets (including regional

12   and national advertising that reaches California consumers through print, television, radio, and

13   the internet). And compliance with the State's regulatory interpretations could create bad will for

14   Miyoko's, as customers become frustrated with the unavailability of plant-based dairy products in

15   California.

16       49.   These serious harms—in conjunction with the added expense that the State seeks

17   to impose by forcing Miyoko's to specifically tailor its product labels for distribution in

18   California—demonstrate that the burden on speech is unjustifiably excessive when weighed

19   against the State's illusory, unproven need to prevent alleged consumer confusion.

20       **CLAIM FOR RELIEF: FIRST AMENDMENT (42 U.S.C. § 1983)**

21       50.   Miyoko's has the right, under the First Amendment to the U.S. Constitution, to

22   engage in truthful speech and to control the content of that speech through marketing,

23   advertising, labeling, and public advocacy.

24       51.   The State of California's enforcement and regulatory position—as embodied in its

Complaint

1   December 9, 2019 letter to Miyoko's, its similar communications to other plant-based food

2   producers, and its application or proposed application of state and federal statutes and

3   regulations as reflected in the letter—unreasonably restricts Miyoko's right to free speech by

4   prohibiting the company from making truthful statements about the identity, quality, and

5   characteristics of vegan and plant-based products, including referring to plant-based products

6   using dairy and dairy-analogue terms.

7       52.   Specifically, the State of California's enforcement and regulatory position

8   prohibits Miyoko's from truthfully labeling, marketing, and advertising plant-based dairy

9   products in a manner that effectively and accurately describes them as replacements for

10   conventional dairy products. The State's position further restricts Miyoko's ability to convey its

11   core mission to the public through language and images.

12      53.   The State of California, through officials in the Department of Food and

13   Agriculture, is prohibiting Miyoko's from engaging in protected speech based on its content and

14   based on the viewpoint expressed through that speech.

15      54.   The State of California, through officials in the Department of Food and

16   Agriculture, is preventing Miyoko's from discussing truthful and non-misleading information

17   about matters of public significance.

18      55.   There is no substantial state interest in the speech restrictions imposed by the

19   State, and the restrictions and requirements go far beyond what would be necessary to protect

20   any purported state interest in preventing consumer deception or confusion. Moreover, the State

21   of California has failed to substantiate any claims of consumer deception of confusion through

22   actual, empirical evidence—as opposed to mere speculation or rote invocation of speculative

23   concerns about confusion.

24      56.   Content-based or viewpoint-based rules are not necessary to achieve any

Complaint

21

1  purported government interest.

2      57.     The State of California is prohibiting not just Miyoko's protected speech but the

3  speech of any plant-based dairy company that does business in California.

**PRAYER FOR RELIEF**

5      For all of these reasons, the plaintiff request that this Court:

6      a.     Grant a preliminary and/or permanent injunction enjoining the defendants from

7             enforcing state or federal law against Miyoko's in the manner set forth in the

8             State's December 9, 2019 letter;

9      b.     Enter a declaration that the application of the state and federal laws set forth in

10            the State's December 9, 2019 letter to Miyoko's violates the First Amendment to

11            the United States Constitution on a solely as-applied basis;

12     c.     Award costs, attorneys' fees, and interest under 42 U.S.C. § 1988; and

13     d.     Allow such other and further relief as this Court finds just.

Respectfully submitted,
*/s/ Alene Anello*
Alene Anello (State Bar No. 316387)
Amanda Howell (*pro hac vice* forthcoming)
**ANIMAL LEGAL DEFENSE FUND**
525 East Cotati Avenue
Cotati, CA 94931
(707) 795-2533
*aanello@aldf.org*
*ahowell@aldf.org*

Deepak Gupta (*pro hac vice* forthcoming)
Daniel Wilf-Townsend
**GUPTA WESSLER PLLC**
1900 L Street, NW, Suite 312
Washington, DC 20036
(202) 888-1741
*deepak@guptawessler.com*

*Attorneys for Plaintiff Miyoko's Kitchen, Inc.*

Complaint