IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

MIYOKO'S KITCHEN,

    Plaintiff,

v.

KAREN ROSS, in her official capacity as Secretary of the California Department of Food and Agriculture, and STEPHEN BEAM, in his official capacity as Branch Chief of the Milk and Dairy Food Safety Branch,

    Defendants.

Case No. 3:20-cv-893-RS

**DECLARATION OF NEIL COHEN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

I, Neil Cohen, declare as follows:

1. I am the Vice President of Marketing for Miyoko's Kitchen. I have been with Miyoko's since October 15, 2019. In my role as Vice President of Marketing for the company, I ensure that we accurately convey the company's unique mission and the true nature of our delicious products to consumers. I am tasked with overseeing the marketing department with three direct reports as well as agency and contractor management. This includes overseeing the marketing all of Miyoko's products—including its cultivated vegan butter. In light of my role, I am making this declaration to describe in detail the effect that the California Department of Food and Agriculture's actions have had on Miyoko's ability to get its message across to the public.

2. In my role as Vice President of Marketing, I know that Miyoko's unique position of being a mission-based organization resonates with consumers. Miyoko Schinner created this company to create and spread compassion for animals. Miyoko's has a passionate following because consumers have a connection to our mission of "revolutionizing dairy with plants." They love our animal rescue and sanctuary work, and our work to improve options for consumers who do not wish to harm animals when they want delicious dairy products. As we tell our consumers, "phenomenally vegan" is more than just a mission. It's a lifestyle. This ethos is inextricable to our brand—and not being able to communicate it would be unspeakably detrimental to the company.

DECLARATION – NEIL COHEN
Case No. 3:20-cv-893-RS
1



3. Our ability to use phrases like "cultured vegan butter," "plant-based dairy," "100% cruelty and animal free," and images of our animal sanctuary are crucial to our ability to convey the company's mission to consumers. Without these phrases and images, we can't truly express who we are as a company.

4. When I first became aware of the Milk and Dairy Food Safety Branch's letter, we had just completed redesigning all the new packaging that incorporated all of the company's brand messaging. Before receiving the letter, we had made the decision to even more clearly highlight the company's mission on product packages while still maintaining complete clarity that we are a vegan brand. This is actually important: Although many companies in our space use terms like plant-based, we believe "vegan" provides the most clarity for consumers. We had made the decision to show Miyoko as a real person on product packages and show the kindness that she, and her company represent. So, all new product packages across all product lines now include a picture of Miyoko hugging Erica—one of Miyoko's rescue cows.

5. After reading the Branch's letter, which specifically demanded that we remove the image of a sanctuary volunteer hugging a cow from our website, my initial feeling was one of shock, surprise and a quite bit of concern—my initial thought was that this was a going to be a nightmare, and I was immediately worried that we would have to re-do all of the new packaging and corresponding marketing. This would be incredibly costly to the company. Costly in terms of opportunity cost—we would have to devote enormous effort to redo all the packaging instead of other marketing activities that would increase demand for the products and velocity at retail. And also incredibly costly financially and in terms of the personnel involved.

6. Because the letter presented such a huge threat to the company and implicated areas under my purview, we had a number of team meetings along with management to determine courses of action. We had scores of meetings, phone calls, exchanged countless emails, and have spent significantly more time in our development of marketing materials—all because of the Branch's enforcement letter. I would conservatively estimate that the number of hours we've spent dealing with the fear and repercussions of the enforcement letter to be well in excess of 100 hours. Of course, this

DECLARATION – NEIL COHEN
Case No. 3:20-cv-893-RS
2

estimate doesn't encompass the stress of having our hands tied in marketing and packaging, and operating under the cloud of uncertainty created by the state's letter.

7. The marketing department that I oversee has experienced a notable chilling effect thanks to the Branch's enforcement letter—in essence, we operate under a cloud each and every day. As a direct result of receiving the Branch's letter, we've refrained from using certain words and images on marketing materials and packages out of fear that those words and images will trigger further enforcement action by the Branch. We've also had discussions about wanting to change or improve marketing materials or packages but are now unsure what we can and cannot say. This means that we've been unable to make innovations or changes to our communications—we've essentially avoided saying anything new out of fear of further enforcement from the Milk and Dairy Food Safety Branch. Everything that the marketing department does is now under additional internal scrutiny.

8. The letter has also had a chilling effect on the health-related claims that Miyoko's uses in its marketing and packaging. We've had several internal discussions about what we can and cannot say. For instance, because the Branch took umbrage with the phrase "lactose free" (which is of course completely true, and very important to consumers who purchase Miyoko's products) we have been unable to change packaging to include claims that the products are also, e.g., "GMO-free." We are also afraid to use certain callouts in the products' marketing and packaging—something as simple as "cruelty free" could be considered out of compliance (especially if you can't show an image of someone hugging a cow).

9. Thanks to the state's letter, we had to make the unfortunate decision to remove entire portions of a brand video that we were putting together for social media. The video is aimed at conveying who the company is and what's important to us—and yet we had to edit out more than 45 seconds of it for fear of being further targeted by the Milk and Dairy Food Safety Branch.

10. After receiving the enforcement letter, we also made the decision to place the "vegan" stamp on our cultured vegan butter products in an even larger font.

DECLARATION – NEIL COHEN
Case No. 3:20-cv-893-RS
3



11. In recent months, the COVID-19 pandemic has dramatically increased public consciousness about the dangers and evils of industrial animal agriculture—for workers, for public safety, and for the good of the planet. The viral epicenters at slaughterhouses run by companies like Smithfield has put the issue in a new public light. Now, more than ever, consumers are looking for alternatives to animal-based products. But Miyoko's has been forced to proceed cautiously and not fully join this public conversation because we are afraid of further enforcement by California's Milk and Dairy Food Safety Branch.

12. In short, the company, and my department specifically, are now operating with uncertainty and an omnipresent fear of enforcement. We have been unable to engage in speech on issues that we care about deeply, as a result of the letter, and we are stuck in limbo. And being stuck with the status quo is an untenable position for a company's marketing department. We are tasked with communicating who we are and what we do. But since the Branch's letter, feel we are unable to effectively do just that.

13. Further, given our company's mission, we do not want to change our marketing and packaging representations to remove images of Miyoko hugging her cow or truthful phrases like "cultured vegan butter." These claims and images are in no way misleading, but they *are* essential to communicate our mission and brand. Miyoko's is a unique brand in that our founder and CEO is an outspoken advocate. I believe that if we are silenced, that will send a chilling effect throughout the marketplace for other plant-based dairy producers.

14. In short, the Branch's enforcement letter has made my job as Vice President of Marketing—and the successful marketing for Miyoko's much more difficult for me and for the company as a whole. Because of this enforcement, there has been a chilling effect on what we can say, how far we can push the brand, and how my department can communicate to consumers (e.g., on social media and online videos). I feel as though I cannot effectively reflect the company's views in its marketing right now thanks to the chilling effect of the Branch's letter.

15. I have personal knowledge of the facts set forth in this declaration and could and would testify to those facts if called as a witness.

DECLARATION – NEIL COHEN
Case No. 3:20-cv-893-RS
4



16. I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 24 day of May, 2020

Neil Cohen

DECLARATION – NEIL COHEN
Case No. 3:20-cv-893-RS
5