XAVIER BECERRA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General
MICHAEL S. DORSI
Deputy Attorney General
State Bar No. 281865
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3802
  Fax:  (415) 703-5480
  E-mail:  Michael.Dorsi@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **MIYOKO'S KITCHEN,**<br><br>                         Plaintiff,<br><br>v.<br><br>**KAREN ROSS, in her official capacity as Secretary of the California Department of Food and Agriculture, and STEPHEN BEAM, in his official capacity as Branch Chief of the Milk and Dairy Food Safety Branch,**<br><br>                        Defendants. | 3:20-cv-00893-RS<br><br>**DECLARATION OF DR. STEPHEN BEAM IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:         August 13, 2020[1]<br>Time:        1:30 p.m.<br>Courtroom:  3<br>Judge:       Honorable Richard Seeborg<br><br>Trial Date:   Not Set<br>Action Filed: February 6, 2020 |

---

[1] This motion is noticed motion under Northern District of California Local Rule 7-2, with hearing automatically vacated pursuant to Northern District of California General Order 72.

1

I, Stephen Beam, declare:

1. I am the Chief of the Milk and Dairy Food Safety Branch of the California Department of Food and Agriculture. In that official capacity I am a defendant in this action. The statements contained in this Declaration are based on my own personal knowledge and if called to testify I could and would competently testify thereto. This is my second declaration in this matter.

2. I have held my current position for 16 years, and I have worked at the Department of Food and Agriculture ("the Department") for nearly 21 years. I hold a Ph.D. in Animal Science from Cornell University.

3. The Department is responsible for the application and enforcement of state and federal statutes and regulations concerning food labeling. Among these statutes and regulations are standards of identity. A standard of identity is a definition of a type of food based on commonly used names. Standards of identity apply to all kinds of foods, including grain products, meats, dairy products, and substitutes for dairy products. It is the policy of the Department to enforce these rules across all food industries.

4. Although all food industries are governed by standards of identity, the Department's practices for how to enforce standards of identity are tailored to specific industries. In the case of dairy products and products that resemble dairy products, state statutes require review and approval of labels by the Department prior to their use.

5. The Milk and Dairy Food Safety Branch ("the Branch") is responsible for the Department's review and approval of food labels for milk, frozen and cultured dairy products, cheese, and products resembling milk products. California Food and Agricultural Code section 32912.5 assigns this duty to the Department, and the Department assigns it to the Branch.

6. The Milk and Dairy Food Safety Branch receives thousands of labels for approval each year. During the period of January 1, 2019 through May 31, 2020, the Branch reviewed over 3,000 labels, about 10% of which required revision. The Branch sent over 90 letters during this period informing manufacturers that compliance with regulations required changes to their labels.

7. The system of standards of identity allows the Department to regulate a large number of products by applying uniform rules across entire sectors. Relying on standards of identity rooted in ordinary usage, most of which have a long history as recognized names for food, allows the Branch to review and approve a large volume of labels each year. This serves the statutory mandate, *see* Cal. Food & Agric. Code §§ 32701, 32912.5, 32913, 32914 & 38902, of preventing false, misleading, and deceptive marketing and unfair competition while maintaining a level playing field. In the context of butter, this means that products traditionally understood as butter—made from milk or cream and 80% milk fat—are identified as butter. Other products—whether they contain some dairy ingredients or not—may not be called butter.

8. For the most part, the Department and the California legislature have limited discretion concerning standards of identity. With few exceptions, federal law preempts state law, setting nationwide standards of identity. States have the power to determine their own method of enforcement, and states may decline to enforce standards of identity altogether, but states cannot enforce standards of identity contrary to federal statutes and regulations.

9. Because federal and state law separately defines butter alternatives such as margarine and spreads, the Branch reviews and approves labels for "products resembling milk products" but does not review labels for margarines or spreads. This does not mean margarines and spreads are exempt from regulation; they may still be subject to enforcement for misbranding. But those labels need not be approved by the Branch.

10. Products labeled as "butter," whether they are made from milk or cream, made from plants with some dairy product added, or made entirely from plants are subject to review by the Branch.

11. Based on my experience and my review of Department records, Miyoko's was the first 100% plant-based product the Department reviewed that identified itself as butter.[2] Since receiving Miyoko's label, the Department has also received labels for additional products identified as butter that do not satisfy the standard of identity for butter.

---

[2] Conversely, I am unaware of any producer whose product that satisfied the standard of identity for butter seeking approval of a label that does not identify the product as "butter."

12. The Department's position is that it is required by state statutes to approve or require modification to Miyoko's labels, and that under relevant federal law and regulations, including the federal standard of identity for butter, codified at 21 U.S.C. § 321a, and the federal description of the misbranding of food, 21 CFR § 101.18, Miyoko's label is not permissible.

13. The Department sent the letter dated December 9, 2019 (ECF No. 1-1) to Miyoko's, stating the Department's position that the product cannot be identified as "butter."

14. Consistent with the confidentiality requirement stated in California Food and Agricultural Code Section 38946, the Department sent the December 9 letter only to Miyoko's. The Department did not publicize the letter.

15. The December 9 letter was not the result of a request or other comment originating outside the Department asking for enforcement against Miyoko's. The Department received no such request.[3]

16. The Department is aware that there are other types of products that use the term butter, including peanut butter and fruit butters. These products have been sold for decades and have their own federal standards of identity. Both peanut butter and fruit butter have federal standards of identity dating back to the 1970s. *See* Peanut Butter, 21 CFR §§ 164.110 (first promulgated by Tree and Peanut Products, 42 Fed. Reg. 14,475 (March 15, 1977)), Fruit Butter, 21 C.F.R. § 150.110 (first promulgated by Fruit Butter, 42 Fed. Reg. 14,445 (March 15, 1977)). These terms describe ingredients in the products (peanuts, fruit). The Department acknowledges that the federal government made a distinction based on ordinary usage and history to assign standards of identity to peanut butter and fruit butters through a federal rulemaking process, and the Department applies those standards of identity.

17. The use of dairy terms is not the only aspect of a product label that the Branch reviews. The Department also requires that labels be truthful. For example, the Department does

---

[3] After Miyoko's filed this lawsuit, the Department received one email from a trade association concerning Miyoko's. That email message included, as an attachment, a publicly available document submitted to the federal Food and Drug Administration seeking regulatory action concerning the labeling of dairy substitute products. The Department has already provided a copy of this email exchange to Miyoko's.

1  not approve labels that use the phrase "hormone free" for products that contain hormones. The
2  Branch applies this principle to dairy and plant-based products.
3      18.  For Example, the Department is aware of consumer concern over the use of rBST, an
4  FDA-approved artificial growth hormone injected into cows to increase milk production. For
5  manufacturers wanting to market products made from the milk of cows not treated with rBST, the
6  Branch has approved labels that clearly state that the products were made from cows not treated
7  with rBST.
8      19.  Miyoko's label claims that the product is hormone free. The Department understands
9  this claim is not true; the plants used to make Miyoko's "vegan butter" product contain
10 endogenous hormones. The December 9 letter identifies this concern and asks Miyoko's to
11 change its label.

13 I declare that the foregoing statements are true and correct under penalty of perjury.
14 Executed this day, July 16, 2020, in Sacramento, California.

*/s/ Stephen Beam*
STEPHEN BEAM

18 As the attorney e-filing this document, attorney Michael S. Dorsi attests that Stephen
19 Beam has concurred in the filing of this document. */s/ Michael S. Dorsi*

28 SF2020200476
42270818.docx

5